UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAJUANA MILTON, et al.,<br><br>            Plaintiffs,<br><br>      v.<br><br>REGENCY PARK APARTMENTS, et al.,<br><br>            Defendants. | No. 2:13-CV-01284-KJM-CKD<br><br><br><br>ORDER |

          This matter is before the court on the motion by plaintiff and guardian ad litem Tajuana Milton to approve the compromise of the claims of her two minor children, D.M. and D.C. Pl.'s Mot. Approve Minors' Compromise ("Pls.' Mot."), ECF No. 36. After a mediation session conducted by a member of this court's Voluntary Dispute Resolution Panel (VDRP), plaintiff entered into a legally enforceable, confidential settlement agreement with defendants to settle alleged violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*., and related state laws. This motion is decided without a hearing. For the reasons below, the court GRANTS the motion.

I.       BACKGROUND

          Plaintiff filed a first amended complaint on August 23, 2013. First Am. Comp. ("FAC") ECF No. 8. The following allegations are taken from that complaint.

On or about May 8, 2012, plaintiff Milton entered into a lease with defendants for 6220 Morgan Place, Apt. 115, Stockton, California. FAC ¶ 14. On or about April 26, 2013, plaintiffs D.M. (seven years old at the time) and D.C. (five years old at the time) were riding their scooters in the common area of the complex. *Id*. ¶ 15. Plaintiff Milton noticed her son, D.C., and several other small children talking to Dan Ripoyla, an employee of the defendant. *Id*. D.C. told his mother the employee had told them they could not ride their scooters anymore. *Id*. Both D.C. and D.M. were "rattled by the situation," D.C. was "visibly shaking and nervous" and D.M. was "sitting on the steps with a sad face." *Id*.

On or about April 27, 2013, D.M. and D.C. again were seen riding their scooters around the complex. *Id*. ¶ 16. This time, Ripoyla went to Milton. *Id.* He explained her children could no longer ride scooters, bikes, or skateboards. Milton responded that rule is not stated in the lease. *Id*. Ripoyla said it did not matter, if there is a sign on the grounds then she and her children must follow them. *Id*. When asked where the sign was, he stated there was a sign posted by the mailboxes, about 100 feet away from the apartment. *Id*. He told her if her children were caught riding their scooters again, he would issue a 30-day notice to terminate her tenancy. *Id*.

On or about April 28, 2013, Ripoyla, using his cell phone, recorded D.M. and D.C. riding their scooters outside. *Id*. ¶ 17. Three other parents and tenants confronted him. Ripoyla "became very wild" and "started yelling," saying that "you believe that are smarter than me," and "you people don't follow rules." *Id*. Milton took her children inside. *Id*. Ripoyla is known for his "confrontational attitude and harassment," about which "many tenants have complained." *Id*. ¶ 31.

On April 29, 2013, Milton went to the apartment manager's office to discuss what had happened. *Id*. ¶ 18. The apartment manager explained Ripoyla's actions were acceptable, and reiterated that children cannot ride bikes, scooters, skateboards, or play with balls on the property. *Id*. Milton responded she would not have chosen the apartment had those terms been in her lease, and asked for a list of toys her children could not use in the common area. *Id*. The employee told Milton she could call corporate and wrote down the

1   telephone number. *Id*. Milton called the corporate office, and was again told her children
2   could not play with balls, skateboards, bikes or scooters on the property. *Id*. Such rules,
3   according to the corporate office, are city laws as well. *Id*. The corporate office agreed to fax
4   Milton a document containing the relevant city law and a list of toys the children were
5   prohibited from playing with (*id*. ¶ 19), but she never received the fax. *Id*. ¶ 20.
6            On or about May 13, 2013, D.M. and D.C. were again riding their scooters in
7   the common area under Milton's supervision. *Id*. ¶ 21. The resident manager began running at
8   D.C., "screaming at him, flailing her arms in the air as she ran at him." D.C. rode toward his
9   mother, "tears streaming down his face." *Id*. The resident manager walked over to Milton and
10  handed her a written "formal warning." *Id*. D.M. was in "a confused daze" and D.C. "was
11  extremely shaken up." *Id*.
12           On or about June 6, 2013, defendants issued a "final warning" to Milton, stating
13  that her children were still riding their scooters, and had also used chalk on a stairway in the
14  complex. *Id*. ¶ 25. The document stated that Milton must comply with the rental agreement or
15  she would be given a thirty day notice to vacate. *Id*. Plaintiff is aware of incidents where
16  residents without children who violated building rules were not issued warnings by the building
17  management. *Id*. ¶¶ 22-24. Milton delivered a written response to the final warning and
18  delivered it to the management office. A representative told Milton the building owner would
19  punish D.M. by not allowing him to swim in the pool. *Id*. ¶ 26. This was followed by a written
20  notice on or about June 12, 2013, delivered to Milton, which stated that children under the age
21  of 14 may not use the pool without adult supervision. *Id*. ¶ 27. In addition, defendants
22  instituted a curfew for children at the complex. *Id*. ¶ 30.
23           Milton, D.M. and D.C. allege violations of the Fair Housing Act and related
24  state laws for discrimination on the basis of familial status against defendants Regency Park
25  Apartments, Jay Carmac Associates, and LVW Apartments, LLC. FAC ¶¶ 1, 13. As noted, the
26  parties successfully participated in the court's VDRP; they filed a notice of settlement on
27  September 29, 2014, noting the need to file the instant motion as part of settlement. Notice of
28  Settlement at 1, ECF No. 34. The court directed the parties to file dispositional documents by

October 20, 2014.  Minute Order, ECF No. 35.  Plaintiff filed the instant motion on October 6, 2014.  ECF No. 36.

II.     STANDARD

Federal Rule of Civil Procedure 17(c) provides, in pertinent part, that a district court "must appoint a guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action."  Fed. R. Civ. P. 17(c).  In the context of proposed settlements in suits involving minor plaintiffs, the district court's special duty requires it to "'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'"  *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)).  The court provided specific guidance "on how to conduct this independent inquiry."  *Robidoux*, 638 F.3d at 1181.  District courts should "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases."  *Id*. at 1181–82.

Beyond the substantive requirements applicable to the compromise of a minor's claim, the Eastern District has issued Local Rules ("L.R.") that govern the procedure for submitting requests for approval of a proposed settlement or compromise of a minor.  In actions in which a minor is represented by an appointed representative, "the motion for approval of a proposed settlement or compromise shall be filed and calendared pursuant to L.R. 230."  L.R. 202(b)(2).

Local Rule 202(b)(2) provides an application for approval of a settlement of a minor shall disclose, among other things, the age and sex of the minor or incompetent, the nature of the causes of action to be settled or compromised, the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, the manner in which the compromise amount or other consideration was determined, including such additional information as may be required to enable the court to determine the fairness of the settlement or compromise, and, if a personal injury claim, the nature and extent of the injury

with sufficient particularity to inform the court whether the injury is temporary or permanent. *Id.*

### III. ANALYSIS

Under the proposed settlement agreement, each of the minors is to receive $10,000. Pls.' Mot. at 9. Plaintiffs request the settlement proceeds be deposited into an interest-bearing FDIC or NCUA insured account held in the name of each minor from which no withdrawals shall be made without a court order until claimants reach the age of majority.[1] Milton Decl. ¶ 7 ECF No. 36-2.

Plaintiff's motion includes declarations and documents supporting the reasonableness of the settlement given similar settlement agreements and the nature of the injuries asserted. Plaintiffs D.M. and D.C. suffered emotional distress, but neither required any medical or psychiatric treatment for the injuries they sustained as a result of the discrimination. Pls.' Mot. at 7. Moreover, the minor plaintiffs' injuries were not permanent. *Id*. Plaintiff agrees, by way of settlement, no defendant has offered to pay any other person or persons money damages arising out of the same incident that resulted in injury to the claimants. Milton Decl. ¶ 5.

In their settlement agreement, the parties have provided the information needed to evaluate the reasonableness of the settlement as required by Local Rule 202(b)(2). The agreement is reasonable given the nature of the alleged wrongs and injuries described. It also is consistent with the range of settlements in other cases. *See Guerra v. Madera Mgmt. Co.*, No. 1:11-CV-01488-LJO, 2012 WL 4091994, at *3 (E.D. Cal. Sept. 17, 2012) *report and recommendation adopted,* No. 1:11-CV-01488-LJO, 2012 WL 4833804 (E.D. Cal. Oct. 10, 2012) ($2,500 to each minor subjected to FHA violation is reasonable); *Fair Hous. Council of Cent. Cal. v. Ephesians Mgmt. & Holding, LLC,* 2010 WL 1541076, at *1 (E.D. Cal. Apr. 16, 2010) (minors to receive between $1,900- $2,850 each from a total of $11,400 per family after

---

[1] Claimant D.M. is currently eight years old and will reach the age of majority on February 24, 2024. Claimant D.C. is currently six years old and will reach the age of majority on November 6, 2025.

5

1  deduction of attorneys' fees); *Monroe v. Cowing Litton Properties*, LLC, 2011 U.S. Dist.
2  LEXIS 156961 (C.D. Cal. Dec. 5, 2011) (approving minor's compromise of $3,500 per child
3  who had been subjected to the housing discrimination).  The court concludes the settlement
4  serves the best interests of D.M. and D.C.

IV.    CONCLUSION

For the reasons set forth above, the court GRANTS the motion to approve the compromise of minor children's settlement.  Parties are instructed to file dispositional documents no later than 14 days from the date of this Order.

IT IS SO ORDERED.

DATED: January 6, 2015.

_____
UNITED STATES DISTRICT JUDGE